T.C. Summary Opinion 2013-66

UNITED STATES TAX COURT

LAWRENCE AMOS ZUMO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19563-12S L.                    Filed August 15, 2013.

Lawrence Amos Zumo, pro se.

<u>Kristina L. Rico</u> and <u>Jason M. Kuratnick</u>, for respondent.

SUMMARY OPINION

JACOBS, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The dispute between the parties concerns respondent's determination sustaining the filing of a lien to collect petitioner's unpaid Federal income tax for 2007, 2008, 2009, and 2010.[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, in effect at all relevant times.

Background

At the time he filed his petition, petitioner resided in Maryland.  Petitioner and his wife filed a joint 2007 Federal income tax return on or around August 12, 2008; a joint 2008 Federal income tax return on or around June 1, 2010; a joint 2009 Federal income tax return on or around October 12, 2010; and a joint 2010 Federal income tax return on or around April 15, 2011.  They did not pay the tax reported thereon.  On the basis of amounts reported on these returns, respondent made the following assessments:

|  |  | Additions to tax | |
| Year | Tax | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 2007 | $21,144 | $934.00 | $516.00 |
| 2008 | 16,963 | 3,591.67 | 1,262.04 |
| 2009 | 16,930 | 3,629.25 | 564.55 |
| 2010 | 11,738 | -0- | 35.36 |

[1]Petitioner's 2007 tax year was included in the petition.  On March 7, 2013, respondent moved to dismiss petitioner's 2007 tax year for mootness and to strike the year from the petition.  The Court granted respondent's motion on March 8, 2013.

Petitioner is a neurologist. The income from his practice has been declining because of a reduction in both patient volume and medical insurance reimbursements. Petitioner and his wife own numerous properties--their primary residence and 13 rental properties. Unfortunately, the residence was severely damaged by fire and the rental properties failed to yield sufficient income to allow them to be robust investments. Petitioner and his wife also owned a liquor store which was operated from the first floor of the property in which they resided. Additionally, petitioner received royalties (the amounts of which are not in the record) from a book he wrote. The couple have a 19-year-old son and a 9-year-old daughter.

On October 11, 2011, respondent mailed petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, advising petitioner that respondent was going to file a notice of Federal tax lien on October 12, 2011, to collect unpaid liabilities for taxable years 2007, 2008, 2009, and 2010. Letter 3172 further informed petitioner that he could request a hearing with the Internal Revenue Service Office of Appeals.

On October 19, 2011, respondent received a completed Form 12153, Request for a Collection Due Process or Equivalent Hearing (section 6330 hearing), from petitioner. Petitioner did not dispute his self-assessed taxes for

2007, 2008, 2009, or 2010, but he asserted that he had paid his 2010 tax liability in full.[2] On March 19, 2012, respondent received a Form 656, Offer in Compromise, from petitioner for 2007, 2008, 2009, and 2010. Petitioner stated that there was doubt as to full collectibility of the taxes; he offered $10,000 to settle his tax obligations. Petitioner claimed financial hardship arising from: (1) the destruction of his residence as a result of a fire on January 6, 2010; (2) an increase in property taxes on his income-producing rental properties; (3) decreased insurance reimbursements; and (4) the failure of his tenants to pay rent. Petitioner stated he would borrow funds to settle his tax obligations from family and friends. By letter dated April 6, 2012, respondent acknowledged receipt of petitioner's request for a section 6330 hearing. By letter dated April 11, 2012, respondent informed petitioner that his request was assigned to an Appeals officer.

Petitioner's case was assigned to Settlement Officer Lynne McDermott. On April 18, 2012, Settlement Officer McDermott wrote petitioner a letter in which she scheduled a telephone section 6330 hearing and requested him to submit Form 433-A, Collection Statement for Wage Earners and Self-Employed Individuals, detailing certain financial information.

---

[2]Petitioner provided no documentation to substantiate this assertion.

On April 26, 2012, petitioner sent Settlement Officer McDermott a completed Form 433-A in which he reported his monthly income was $9,000 and his monthly living expenses were $8,850, resulting in disposable monthly income of $150. Settlement Officer McDermott reviewed the information. She accepted petitioner's claim that he had $9,000 in monthly income, but she determined his allowable monthly expenses were $6,276, leaving a disposable monthly income of $2,724. This determination was based on the amounts petitioner substantiated, as well as national and local standards for the size of petitioner's family. Specifically, Settlement Officer McDermott determined the following modifications to petitioner's reported monthly expenses.

(1) She increased petitioner's "national standard expense" (an expense not further defined in the record) by $550 inasmuch as petitioner had reported $900 and the national standard expense for a four-person family, such as petitioner's, was $1,450 per month.

(2) She reduced petitioner's reported expenses for two automobiles, public transportation, out-of-pocket health care expenses, and total healthcare expenses.[3]

---

[3]Respondent accepted petitioner's expense claims with respect to housing and utilities, transportation, taxes, and other secured debt.

Petitioner had reported $800 for one automobile and $600 for another.[4]  She reduced the expense amount to $517 for each car pursuant to the amount allowed by the standard for Baltimore, Maryland.  Petitioner reported $500 for public transportation, but Settlement Officer McDermott allowed only $182 for petitioner's son's school commute because she had already allowed expenses for petitioner's cars.  Petitioner reported $1,600 for out-of-pocket health expenses, but Settlement Officer McDermott reduced that amount to the national standard of $240 because petitioner did not substantiate the amount reported.  Petitioner reported $600 for other health care expenses, but Settlement Officer McDermott reduced the amount to $370 because that was the substantiated amount for petitioner's health insurance premium.

(3) She disallowed petitioner's $500 reported child care expenses because she determined that petitioner's wife was a stay-at-home parent and petitioner failed to substantiate the reported amount.  On Form 433-A, petitioner did not state that his wife worked.  Nor did he provide information as to salary, if any, his wife received.  Settlement Office McDermott also disallowed $350 reported for life insurance payments because petitioner failed to substantiate that amount.

---

[4]In actuality, petitioner owned a third car, but he failed to inform Settlement Officer McDermott of this fact.

(4) She determined that petitioner had overstated the fair market values of his and his wife's assets. Consequently, Settlement Officer McDermott reduced the amounts petitioner reported as the values of the rental properties, vehicles, bank accounts, and individual retirement accounts. Settlement Officer McDermott ultimately determined that the aggregate fair market value of the assets was $1,000,881 and the assets had an "appeals equity value"[5] of $36,500.

Petitioner failed to inform Settlement Officer McDermott that he and his wife owned and operated a liquor store. Consequently, Settlement Officer McDermott did not include the store's income or the value of the store's liquor license in her calculations. Petitioner further failed to inform Settlement Officer McDermott of his book royalties, resulting in that income's not being included in her calculations.

Settlement Officer McDermott reviewed the administrative file transcripts and verified that the requirements of all applicable law and administrative procedure were met. She verified that petitioner's 2007, 2008, 2009, and 2010 taxes were properly assessed, reviewed the notice of demand, and confirmed that petitioner failed to pay the assessments. Settlement Officer McDermott also

---

[5]Appeals equity value is an asset's fair market value reduced by 20% of its fair market value and then reduced again by all encumbrances.

verified that the notice of Federal tax lien filing was properly issued and that the lien was properly filed.

Petitioner, his wife, and Settlement Officer McDermott held a telephone section 6330 hearing on June 5, 2012. Settlement Officer McDermott rejected petitioner's offer-in-compromise, determining that the tax collection potential was more than the $10,000 petitioner proposed and that he could satisfy his income tax obligations by paying monthly installments. Settlement Officer McDermott noted that before the filing of the lien, petitioner had entered into a $900 per month installment agreement with respondent.[6] She informed petitioner that he was no longer bound to pay the $900 monthly installments. Instead, acting within her discretion, Settlement Officer McDermott offered petitioner the option of paying either installments of $700 per month over a period of 72 months or installments of $550 per month over the remaining collection period. Petitioner tentatively agreed to pay $700 monthly. Petitioner also requested that the lien be released in order to permit him to refinance his properties. Settlement Officer McDermott rejected that request, but she informed petitioner that the tax lien could be subordinated to any bank refinancing loan. On June 19, 2012, petitioner called

[6]Settlement Officer McDermott was not involved in the $900 per month installment agreement.

Settlement Officer McDermott, leaving her a message that he would not agree to any installment agreement, but rather he intended to petition the Tax Court.  On June 20, 2012, petitioner sent a fax to Settlement Officer McDermott confirming the information stated in his message and requested Settlement Officer McDermott to reconsider her denial of his $10,000 offer-in-compromise.  Petitioner stated that he had overstated his income and failed to report all of his expenses, although he provided no documentation reflecting this statement.  Petitioner further informed Settlement Officer McDermott that he was concerned about the possibility that he or his wife might suffer a sudden catastrophic illness or even death, although at the time neither was ill.  Settlement Officer McDermott called petitioner on June 26, 2012, leaving a message that she had reviewed his fax and would not reconsider her rejection of his offer-in-compromise.

On July 5, 2012, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), sustaining respondent's lien to collect petitioner's unpaid income tax for 2007, 2008, 2009, and 2010.  In an attachment to the notice of determination, Settlement Officer McDermott reviewed the facts of the case and set forth the reasons for her determination.  The attachment stated that the notice of Federal tax lien "is necessary to protect the government's interest in your assets in the event you

encumber or sell them. As a result, retaining the NFTL balances the need for efficient collection with your concern that any collection action be no more intrusive than necessary."

Discussion

A.    Standard of Review

This case involves a review of respondent's determination to proceed with collection of petitioner's unpaid tax liabilities for 2007 through 2010.[7] Collection due process hearings under section 6320 (regarding liens) are conducted in accordance with section 6330(c). Sec. 6320(c). We therefore refer to such hearings as section 6330 hearings throughout this opinion. After the Commissioner issues a notice of determination following an administrative hearing, the taxpayer may petition this Court for review of the Commissioner's determination. Secs. 6320(c), 6330(d)(1). Our review of that determination is subject to the provisions of section 6330.

The review that we are required to conduct in section 6320/6330 cases focuses on the Commissioner's determination. Because petitioner does not dispute the underlying tax liabilities for the years at issue, we review respondent's

_____

[7]As noted supra note 1, the Court granted respondent's motion to dismiss petitioner's 2007 tax year for mootness and to strike the year from the petition.

determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176 (2000).

An abuse of discretion is defined as any action that is unreasonable, arbitrary or capricious, clearly unlawful, or lacking sound basis in fact or law. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

B.    The Settlement Officer's Calculation of Petitioner's Income and Expenses

Petitioner argues that Settlement Officer McDermott did not properly calculate his and his family's monthly income and living expenses; thus, he contends, she erred in determining his family's financial situation. Petitioner asserts that because of this miscalculation, Settlement Officer McDermott abused her discretion by not accepting his $10,000 offer-in-compromise.

We do not agree with petitioner's assertion that Settlement Officer McDermott abused her discretion. Indeed, Settlement Officer McDermott accepted petitioner's income calculation, as set forth on the Form 433-A, without modification. In this regard, we note that because petitioner failed to inform Settlement Officer McDermott of the income from his liquor store or his book royalties the amount she accepted as petitioner's monthly income was probably understated.

With respect to Settlement Officer McDermott's calculation of petitioner's monthly living expenses, we are mindful that (1) in general, the Commissioner may rely on national and local collection financial standards published by the Secretary, and (2) for the Commissioner to deviate from these standards, the taxpayer is required to demonstrate that he would not have adequate means to provide for his basic living expenses. Marascalco v. Commissioner, T.C. Memo. 2010-130, aff'd, 420 Fed. Appx. 423 (5th Cir. 2011). The Commissioner requires taxpayers to provide reasonable substantiation and documentation with respect to such assertions. Internal Revenue Manual pt. 5.8.11.2.1(4) (Sept. 23, 2008), 5.15.1.7(5) (May 1, 2004).

As noted supra pp. 5-6, Settlement Officer McDermott relied on national standards because petitioner failed to substantiate his reported expenses. And we are mindful that Settlement Officer McDermott increased the amount of the national standard expenses from the reported $900 to $1,450.

Petitioner next argues that respondent failed to take into account his declining financial position resulting from his difficulties with his medical practice, the decline in rents from his rental properties, and the fire damage to his residence. But as we stated supra p. 5, Settlement Officer McDermott accepted petitioner's own calculation of his income in making her determination.

Moreover, she determined that petitioner had overstated the value of his assets including the values of his rental properties, bank accounts, individual retirement accounts, and vehicles. Consequently, she reduced their respective values to reflect the financial reality of petitioner's situation.

Finally, petitioner argues that Settlement Officer McDermott failed to account for the possibility of a sudden catastrophic illness or death during the installment payment period. But petitioner and his wife were in good health, and any question as to their suffering an illness is hypothetical. Moreover, section 6159(b)(3) permits the Commissioner to alter, modify, or terminate an installment agreement should the taxpayer's financial condition change. Therefore, should a medical emergency occur, petitioner is not prevented from seeking a modification reflecting the changed situation. In sum, we find that Settlement Officer McDermott did not abuse her discretion in calculating petitioner's income and allowable expenses.

C. The Settlement Officer's Refusal To Withdraw the Notice of Tax Lien

At the section 6330 hearing, petitioner requested that respondent withdraw the filed tax lien to permit him to borrow money against his rental properties. Settlement Officer McDermott refused this request but informed petitioner that the lien could be subordinated to a loan.

Under certain circumstances, the Commissioner has discretion to withdraw a notice of Federal tax lien. Sec. 6323(j)(1). The lien notice may be withdrawn if (A) the filing of the notice of the lien was premature; (B) the taxpayer has entered into an agreement under section 6159 (i.e., an installment agreement) to satisfy the liability by means of installment payments unless the agreement provides otherwise; (C) the withdrawal will facilitate the collection of the tax liability; or (D) with the consent of the taxpayer or the National Taxpayer Advocate, the withdrawal of the notice would be in the best interest of the taxpayer (as determined by the National Taxpayer Advocate) and the United States. While respondent may withdraw the notice of Federal tax lien under this section, there is no requirement to do so. See sec. 6323(j)(1); sec. 301.6323(j)-1(c), Proced. & Admin. Regs.

Settlement Officer McDermott did not abuse her discretion in refusing to withdraw the notice of Federal tax lien. Petitioner requested that respondent withdraw the lien notice to allow him to borrow additional funds from his bank, but her offer to subordinate respondent's lien to a new bank loan would have accomplished petitioner's goal. Moreover, Settlement Officer McDermott's review of petitioner's administrative file revealed that the notice of Federal tax lien was necessary to protect the Government's interest in petitioner's assets.

D.     <u>Other Matters Considered at the Section 6330 Hearing</u>

Section 6330(c)(1) and (3) provides that the settlement officer must verify that the requirements of applicable law and administrative procedure have been met and consider whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection be no more intrusive than necessary.  In her testimony at trial, Settlement Officer McDermott demonstrated that she verified that the requirements of all applicable law and administrative procedure were met and that she determined that the filing of the lien appropriately balanced the need for efficient collection of taxes with petitioner's concern that the collection action be no more intrusive than necessary.  We are satisfied that the mandates of section 6330(c)(1) and (3) have been met.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.